## Myers *et al.*, Administrators, *versus* Scully.

S. endorsed a note for $10,000 for B., and as collateral security for said endorsement B. transferred to S. certain shares of stock in the Homestead Bank and Insurance Company. At the time of his death B. had paid assessments on said stock, amounting to seventy-five per cent. of its par value, leaving twenty-five per cent. unpaid. B. also had an insurance in said company for $10,000, and upon his death the company deducted therefrom the balance due it. The note was lifted by S., and upon the sale of the stock the administrators of B. claimed one-fourth of the proceeds, on the ground that that proportion of the par value of the stock had been paid for by the money of the estate of B. ; but the court awarded the whole fund to S. *Held*, that this distribution was erroneous, and that the one-fourth belonged to the legal representatives of B., to be distributed as the law directs.

[Myers v. Scully.]

October 29th 1877.　Before Agnew, C. J., Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.　Sharswood, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1877, No. 244.　In Equity.

This appeal was from the decree of the court distributing the proceeds of the sale of certain stock which belonged to John R. Bingler, deceased.

The proceeding was by bill in equity filed by John D. Scully against E. H. Myers and Frank Kohne, administrators of said John R. Bingler, deceased.　The cause was heard upon bill and answer, and after hearing the court made an order for the sale of the stock, and three-fourths of the net proceeds, $3047.25, were paid to Scully, the remaining one-fourth being paid into court to await the result of this controversy.　The court afterwards awarded this remaining one-fourth to Scully, and from this decree this appeal was taken. The other material facts are fully stated in the opinion of this court.

*A. M. Brown* and *Archie Cummins*, for appellants.—The status of all claims against the estate of an intestate or testator is fixed by his death.　The rights of his creditors then become fixed; and no act of the executor or administrator can alter them: Scott *v.* Ramsey, 1 Binn. 221; Deichman's Appeal, 2 Whart. 395; Bosler's Admr's *v.* Exchange Bank, 4 Barr 32.

And if the status of claims against the estate of the deceased is fixed by his death, the status of a pledge made by him in his lifetime is also fixed by his death.　In whatsoever state the pledge may be when the death of the pledgor overtakes it, in that state it must remain, so far as the pledgor or his estate is concerned.　The estate belongs to all the creditors.　The assets are for payment and distribution among them.　If loaned or pledged by the administrator, they can be recovered back again: Abbott *v.* Reeves, 13 Wright 494.

The duties of executors and administrators are strictly those of settlement: Fluck *et al. v.* Hager, 1 P. F. Smith 459; Wilhelm *v.* Folmer, 6 Barr 296; Bonsell's Appeal, 1 Rawle 274; Kaufman *v.* Crawford, 9 W. & S. 134.　If Mr. Scully was affected at all by this transaction of the administrators with the Homestead Bank, it was simply that he became chargeable as trustee of the fund in dispute: Hill on Trustees 164, 3d Am. ed. 246; Abbott *v.* Reeves, Buck & Co., *supra.*　In this matter the Homestead Bank is itself a trustee: Bayard *v.* Farmers' and Mechanics' Bank, 2 P. F. Smith 232; and the transaction of Bingler's administrators with it could not deprive the creditors of their rights.

*M. W. Acheson*, for appellee.—In the settlement between the

appellants and the company of the dealings and transactions between their intestate and the company the sum of $5250 in the hands of the company and payable upon the policy of insurance was appropriated to the past due assessments which Bingler owed upon his stock. That appropriation was by and with the consent of the appellants and was presumably correct. The appellee does not admit that under the contracts between Bingler and the company the latter had no right to insist upon the appropriation aforesaid. The contrary is not alleged in the answer, and it would seem from the contract relations of the parties, that the insurance money in the hands of the company would be applicable to past due stock assessments owed by the assured to the company upon his stock. But if the company had not such right of appropriation then the appellants merely did voluntarily what their testator was bound to do in his lifetime, and what they, as his personal representatives, were bound to do. Upon this record it cannot be successfully maintained that there is any evidence that the appellants as executors of John R. Bingler made any misappropriation of the assets of the estate. It does not appear that the estate of John R. Bingler is insolvent, nor does it appear that the estate owes one dollar besides the debt due the appellee.

Mr. Justice GORDON delivered the opinion of the court, January 7th 1878.

This case comes to us from the decree of the court below, on distribution after sale, on petition of John D. Scully, of some two hundred and ten shares of the Homestead Bank and Life Insurance Company, which belonged to John R. Bingler in his lifetime. It seems that, about the 30th of May 1876, the appellee endorsed, for Bingler's accommodation, a note of $10,000, which was discounted at the Diamond Savings Bank. As collateral security for this endorsement, Bingler transferred to Scully the stock shares above stated. During the life of the decedent the note was renewed, from time to time, and was paid down to $8769.51, which balance was paid by Scully. Also, during this time, Bingler had paid assessments upon the said stock amounting to seventy-five per cent. of its par value, leaving twenty-five per cent. unpaid and due and owing the Homestead Bank and Life Insurance Company. Bingler, before his decease, had, from this same company, taken a risk upon his life of $10,000, and on his death, from the insurance money thus falling due to his estate, the sum of $5250 was retained by the said company as the balance due it on the shares of stock above stated. The proceeds of this stock, sold by order of court, were not sufficient to cover the amount of Scully's claim. Now, this is the contention between the parties to this suit: the administrators of John R. Bingler claim twenty-five per cent. of the money arising from the aforesaid sale, since that proportion of the par value of the

[Myers v. Scully.]

stock was paid for by the money of the estate, and which, but for the superior equities of the bank, would have come into their hands. Scully, on the other hand, claims the whole amount of said proceeds, because, as he alleges, the whole amount of said stock having been pledged to him, he is entitled to hold the same, not merely as it was when assigned to him, or as it was at the time of Bingler's death, but as improved by the funds of the estate after that event. It is for us to determine as to the soundness of this claim. What was assigned to Scully? Certainly only seventy-five per cent. of the par value of the stock; for that was all Bingler had to assign. Had the money, therefore, due to the administrators, not been appropriated to the payment of the remaining twenty-five per cent., the sale would have realized but three-fourths of what is now in court, and the appellee would have had no more than the appellants contend he should have. Now, had there been no insurance on Bingler's life, or had the policy been procured from some other company, the above would have been exactly the condition of affairs; for it would hardly be contended that the representatives of the estate would have been obliged to pay the amount due upon the stock in order to improve the collaterals in Scully's hands. If, however, he had no claim on the estate for a preference of this kind, over other creditors, why shall he have such a claim as matters now stand? As we have said, the money of the estate was appropriated to the balance due on the stock subscriptions only in consequence of the company's equity so to appropriate it; it was so done by force of that equity and not by the will of the administrators. It was, therefore, but a conversion of the funds of the estate from cash to stock, but they remained, in this form, not the less assets of the estate. Admitting, however, that this appropriation was made by the company with the assent of the administrators, and that it could not otherwise have been done, it does not follow that it was so done for Scully's benefit, for the property thus acquired could only be disposed of according to the legal rules governing the distribution of the estates of decedents. Even had the administrators so intended, they could not thus give the appellee a preference over other creditors. It is said, however, that it no where appears that there are other creditors to be affected, there being no allegation that the estate is insolvent. But it is alleged, and not denied, that the administrators had not the means to redeem the pledged stock; in other words, to pay the note Scully was obliged to lift. It follows, necessarily, if the estate is not able to pay its debts it must be insolvent; aside from this, if it be not so, then is the appellee's contest profitless, for his claim will be paid in full, and his collaterals are of no account.

But it has been urged, that there can be but little if any doubt, that the agreement between Bingler and Scully was, that the stock should be paid in full by Bingler, in order that his endorser might

[Myers *v.* Scully.]

have the security unencumbered, and that the administrators, by per‐ mitting the payment thereof, did but carry out such agreement· Be this as it may, there was certainly the prior agreement that Bingler should pay the note for which Scully became liable; but what of that? There is such a contract with every creditor and Scully had no superior equity, which entitled him to a preference over others, or which gave him a right to seize the assets of the estate and apply them to his own use. These belong to the legal representatives of the estate, and it is their right and duty to pos‐ sess themselves of and distribute them as the law directs.

> The decree of the Court of Common Pleas, No. 1, of Allegheny county is reversed, at the costs of the ap‐ pellee, and it is ordered that the money now in court, being the one-fourth part of the net proceeds of the sale of certain shares of stock of the Homestead Bank and Insurance Co., formerly belonging to John R. Bing‐ ler, deceased, be paid into the hands of the adminis‐ trators of the estate of the said John R. Bingler, deceased.